UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
Mohamed Imran Abdulazeez,

                Plaintiff,

         - against -

Hermann E. Depazarce,

                Defendant.
-----------------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 7415 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Mohamed Imran Abdulazeez commenced this action on July 28, 2017 to recover damages for personal injuries purportedly sustained in a motor vehicle collision that occurred on the Cross County Parkway on October 30, 2016. Defendant Hermann E. Depazarce, the driver of the vehicle that collided into the rear of plaintiff's vehicle, has moved for summary judgment on the grounds that plaintiff's cervical injuries were not proximately caused by the subject accident and that the other injuries that plaintiff sustained are not "serious injuries" within the meaning of New York's No-Fault Insurance Law.[1]

---

[1] In 1973, the New York State Legislature enacted the Comprehensive Motor Vehicle Reparations Act (*i.e.*, New York's "No-Fault Law") to promote prompt resolution of vehicular injury claims while alleviating unnecessary burdens on courts. Pursuant to the No-Fault Law, automobile owners are required to purchase automobile insurance and automobile insurers, in turn, are required to compensate the insured for up to $50,000 in losses caused by the use or operation of a motor vehicle in New York state, regardless of fault. Only claimants who have suffered a "serious injury" within the meaning of the No-Fault Law are permitted to file liability claims for personal injury losses that exceed the $50,000 threshold. See N.Y. Ins. Law §§ 5101-5109.

1

For the reasons discussed herein, defendant's motion is granted in part and denied in part.

## I. <u>Background</u>[2]

This case arises from a three-car motor vehicle accident that occurred between Exits 7 and 8 of the Cross County Parkway at approximately 6:30 p.m. on October 30, 2016. At the time of the accident, plaintiff, who was then 35 years old, was the operator and registered owner of a 2016 Jeep Cherokee. The accident occurred when defendant's rental vehicle, a Chrysler sedan, collided with the rear of plaintiff's vehicle.[3] Due to the impact

---

Under the No-Fault Law, a "serious injury" is defined as a personal injury that results in:

> death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment [hereinafter, the "90/180 category"].

N.Y. Ins. Law § 5102(d). As relevant here, plaintiff claims that he suffered a "serious injury" under three of the aforementioned categories: (1) a "permanent consequential limitation of use"; (2) a "significant limitation of use"; and (3) the 90/180 category.

[2] The following facts are drawn from Defendant's Rule 56.1 Statement ("Def.'s Rule 56.1"), Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s Rule 56.1"), Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."); the Affirmation of James M. Carman in Support of Defendant's Rule 56 Motion and the exhibits annexed thereto ("Def.'s Ex. __"); Plaintiff's Memorandum of Law in Opposition to Defendant's Summary Judgment Motion ("Pl.'s Opp."); the Declaration of Albert K. Kim in Opposition to Defendant's Motion for Summary Judgment and the exhibits annexed thereto ("Pl.'s Ex __"); and Defendant's Memorandum of Law in Reply to Plaintiff's Opposition to Summary Judgment ("Def.'s Rep.").

[3] The driver of the third vehicle involved in the collision is not a party to this proceeding.

of the collision, plaintiff claims to have sustained injuries to his cervical spine, lumbar spine, and right wrist.[4]

**A. Post-Accident Medical Treatment**

Plaintiff was transported by ambulance from the scene of the accident to Montefiore Mount Vernon Hospital, where plaintiff reported pain to his neck and back. While at the hospital, plaintiff underwent a physical examination that revealed midline tenderness of plaintiff's neck at C3-C4. A CT scan of plaintiff's cervical spine showed no acute findings. Plaintiff was discharged that evening with instructions to take cyclobenzaprine as prescribed for his neck and back pain. See Def.'s Ex. I at 19-23. While the amount of work that plaintiff missed in the months following the accident is disputed, the parties agree that plaintiff missed at least one week of work immediately following October 30, 2016.[5] See Def.'s Rule 56.1 ¶ 22.

On November 28, 2016, due to persistent pain purportedly stemming from the subject accident, plaintiff sought medical attention at St. Mary's Hospital in Waterbury, Connecticut. Pl.'s

---

[4] Specifically, plaintiff alleges that the injuries to his cervical spine included disc herniations at C4/5 and C3/4 and disc bulges at C2/3 and C5/6; that the injuries to his lumbar spine included radiculopathy and the need for a lumbar spine injection and trigger point injections; and that his right wrist was sprained. See Def.'s Rule 56.1 ¶ 3.

[5] At the time of the accident, plaintiff was working full time at a mobile store and approximately 30 hours per week as a driver for Lyft. See Def.'s Rule 56.1 ¶¶ 20-21. Plaintiff maintains that, in addition to missing a week of work at the mobile store following the accident, he also missed work from November 11, 2016 through December 12, 2016 due to injuries sustained from the accident. See Pl.'s Rule 56.1 ¶ 23.

3

Rule 56.1 ¶ 58. There, plaintiff was prescribed Naprosyn and Flexeril for his neck pain and muscle spasms and was referred to Peter Zilahy, a chiropractor, for treatment. Pl.'s Rule 56.1 ¶ 63. During plaintiff's first appointment with Dr. Zilahy on December 1, 2016, Dr. Zilahy performed a variety of range of motion tests that revealed multiple restricted ranges of motion to plaintiff's cervical and thoracolumbar spines.[6] See Pl.'s Rule 56.1 ¶¶ 69-73. Plaintiff thereafter underwent approximately four months of conservative therapy treatment with Dr. Zilahy, following which plaintiff continued to experience pain and restricted ranges of motion. Plaintiff ceased seeing Dr. Zilahy in April of 2017, when, according to Dr. Zilahy, plaintiff "had reached his maximum medical improvement with respect to conservative therapy treatment." Pl.'s Ex. A ¶ 9.

In February of 2017, prior to concluding treatment with Dr. Zilahy, plaintiff began seeing Dr. Dante Leven, a spinal surgeon. Having concluded that the MRIs that plaintiff obtained at Dr. Zilahy's direction were of poor quality and thus difficult to evaluate, and in light of plaintiff's symptoms and the results of

---

[6] Dr. Zilahy also referred plaintiff for x-ray and MRI testing. Plaintiff underwent x-rays of his cervical and lumbar spines on December 5, 2016, an MRI of his cervical spine on December 19, 2016 (the "December 19 MRI"), and an MRI of his lumbar spine on January 10, 2017.
   Dr. Mahadevan Shetty, the diagnostic radiologist who first reviewed the December 5 x-rays, reported no displaced fracture or dislocation with respect to the cervical spine x-ray, but did note "3 to 4mm of anterolisthesis of C3 over C4 and 2mm of anterolisthesis of C4 over C5." Def.'s Rule 56.1 ¶ 10. With respect to the lumbar spine x-ray, Dr. Shetty reported "no compression deformity, no displaced fracture or dislocation." Def.'s Rule 56.1 ¶ 11.

a physical evaluation, Dr. Leven referred plaintiff for an additional MRI of his cervical spine, which plaintiff underwent on March 12, 2017. See Pl.'s Ex. B ¶ 5. The March 12, 2017 MRI revealed, *inter alia*, a disc herniation at the C4/5 level of plaintiff's cervical spine that was not apparent in the December 19 MRI.[7] Dr. Leven thereafter recommended that plaintiff undergo an anterior cervical discectomy (*i.e.*, cervical spine surgery), which Dr. Leven performed on July 11, 2017. Following that surgery, plaintiff missed approximately three months of work as a manager of a gas station in Hartford, Connecticut.

### B. Prior Injury

On January 1, 2016, approximately ten months prior to the subject accident, plaintiff was assaulted while working at a gas station. See Def.'s Rule 56.1 ¶¶ 26. Plaintiff testified that he was hit in the face between three and five times and was subsequently admitted to St. Francis Hospital and Medical Center in Hartford, Connecticut. See Def.'s Ex. B at 33-34. On January 2, 2016, a CT scan and x-ray was taken of plaintiff's cervical spine, neither of which contained positive findings. Pl.'s Rule 56.1 ¶¶ 120-21. Following his release from the hospital several hours after being admitted, plaintiff did not seek medical

---

[7] The March 14, 2017 report of the radiologist who originally reviewed the results of the March 12 MRI recorded "a C4/5 posterior disc herniation impressing on the vertical margin of the cord; a C3/4 posterior ligamentous disc herniation effacing the ventral thecal sac and abutting the ventral cord; and subligamentous disc bulges at C2/3 and C5/6." Def.'s Rule 56.1 ¶ 17.

5

treatment for injuries sustained from the assault. Pl.'s Rule 56.1 ¶ 122.

## II. **Procedural History**

Plaintiff originally filed this action in the Supreme Court of the State of New York, Bronx County, against defendants EAN Holdings, LLC ("EAN"), Enterprise Rent-A-Car ("Enterprise"), and Hermann E. Depazarce. On October 4, 2017, EAN and Enterprise, both of whom have been dismissed as defendants in this action, removed the case to this Court.[8] Following an initial conference on November 21, 2017, the parties proceeded to discovery.[9]

Discovery having concluded, defendant now moves for summary judgment on the grounds that plaintiff did not sustain a "serious injury" under Insurance Law § 5102(d) as a result of the October 30 accident. In opposing defendant's motion, plaintiff maintains that, at a minimum, there is a genuine issue of material of fact

---

[8] EAN and Enterprise were dismissed from this action pursuant to a voluntary stipulation filed on May 14, 2018. See ECF No. 24.

[9] On November 2, 2018, defendant filed a letter requesting a pre-motion conference in connection with an anticipated summary judgment motion. Defendant's pre-motion letter stated, *inter alia*, that plaintiff's herniated disc, which did not appear in the December 19 MRI, could not have been caused by the October 30 accident. See ECF No. 27. Plaintiff argued in his opposition to defendant's letter that defendant had, *inter alia*, failed to account for the fact that Dr. Leven had requested a second cervical MRI at least in part because the original MRI studies "were of poor quality" and "difficult to evaluate." See ECF No. 28. The Court thereafter directed defense counsel to submit an additional letter explaining why, in light of plaintiff's response highlighting what appeared to be disputed issues of fact, defense counsel was still of the belief that its motion for summary judgment could succeed. See ECF No. 29. In response to that request, defendant filed a letter setting forth substantially the same arguments that were made in his November 2 letter and that are set forth in the instant motion. See ECF No. 30 at 2.

as to whether the herniated disc in plaintiff's cervical spine, which allegedly necessitated plaintiff's July 2017 cervical spine surgery, was proximately caused by the October 30 accident.

Having considered the present record, the Court agrees with plaintiff that there are genuine issues of material fact regarding whether plaintiff's cervical spine injuries are causally related to the October 30 collision. Accordingly, defendant's motion for summary judgment is denied with respect to the issue of proximate cause. Defendant's motion for summary judgment is also denied with respect to plaintiff's claim that he sustained a "serious injury" entitling him to recovery under New York's No-Fault Insurance Law under a theory of either "permanent consequential limitation" or "significant limitation." Defendant's motion is granted, however, with respect to plaintiff's claim that he sustained a serious injury entitling him to recovery under the "90/180 category" of New York's No-Fault Law.

## III. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted)

(quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)). A factual dispute is genuine if a reasonable factfinder could decide in the nonmoving party's favor. Id.

At summary judgment, a court must resolve all ambiguities and draw all justifiable inferences in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986). If it does so, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

**B. New York's No-Fault Law**

A defendant moving for summary judgment in cases governed by New York's No-Fault Law "must establish a prima facie case that plaintiff did not sustain a 'serious injury' within the meaning of Insurance Law § 5102(d)." Yong Qin Luo v. Mikel, 625 F.3d 772, 777 (2d Cir. 2010) (quoting Barth v. Harris, 00 Civ. 1658 (CM), 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001). See also Evans v. United States, 978 F. Supp. 2d 148, 162–63 (E.D.N.Y. 2013) ("When moving for summary judgment in a case involving the No-Fault Law . . . defendant has the initial burden to make an evidentiary showing that the plaintiff has not sustained a serious injury as a matter of law") (internal quotation marks omitted). Under

Article 51 of the No-Fault Law, a "serious injury" is defined as an injury that results in one of the following:

> [1] death; [2] dismemberment; [3] significant disfigurement; [4] a fracture; [5] loss of a fetus; [6] permanent loss of use of a body organ, member, function or system; [7] permanent consequential limitation of use of a body organ or member; [8] significant limitation of use of a body function or system; or [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

Once a defendant has established a prima facie case that plaintiff did not sustain a "serious injury" under § 5102(d), "the plaintiff must rebut with sufficient admissible evidence to raise a genuine issue of fact as to whether the plaintiff has sustained a serious injury." Rivera v. United States, No. 10 Civ. 5767 (MHD), 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012). Rather than rely solely on subjective complaints, "a plaintiff must offer objective proof of an injury." Id. "As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" Id. (quoting Nasrallah v. Helio De, 1998 WL 152568, at *8 (S.D.N.Y. Apr. 2, 1998)).

Finally, and of primary relevance here, "a plaintiff is required to present competent, non-conclusory expert evidence sufficient to support a finding, not only that the alleged injury is 'serious' within the meaning of Insurance Law § 5102(d), but also that the injury was proximately caused by the accident at issue." <u>Carter v. Full Serv., Inc.</u>, 29 A.D.3d 342, 344, 815 N.Y.S.2d 41, 43 (2006). <u>See</u> <u>also</u> <u>Arenes v. Mercedes Benz Credit Corp.</u>, No. 03 Civ. 5810 (NG)(MDG), 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006) ("Even when there is objective medical proof that a plaintiff sustained a serious injury, when additional contributory factors interrupt the chain of causation between the accident and claimed injury--such as a gap in treatment, an intervening medical problem or a pre-existing condition--summary dismissal of the complaint may be appropriate.").

## IV. **Discussion**

Defendant advances two arguments in support of his motion for summary judgment. The first argument, to which nearly all of defendant's motion is devoted, is that plaintiff's neck-related injuries are not causally related to the October 30 accident. Plaintiff's second argument is that, even assuming that plaintiff's neck injuries were caused by the subject accident, plaintiff still did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). Each argument is addressed in turn.

**A. Causation**

The crux of defendant's causation argument is that, because the December 19 MRI was negative for a cervical spine disc herniation, any subsequent positive findings concerning a cervical spine disc herniation (*i.e.*, the positive findings reflected in the March 12, 2017 MRI), could not have been caused by the October 30, 2016 collision. See, e.g., Def.'s Mem. at 16 ("The cervical disc findings that serve as the Plaintiff's claim did not appear until after December 19, 2016. Thus, the new cervical disc findings identified in MRI studies taken on March 12, 2017 cannot be 'caused by' an event that occurred prior to [the] December 19, 2016 MRI study which showed no disc problems at any level."). In support of this argument, defendant relies, *inter alia*, on:

- The MRI report of Dr. Shetty, the diagnostic radiologist who first reviewed the images from the December 19 MRI and opined that there was no evidence for focal disc herniation or spinal stenosis. See Def.'s Ex. G at 3. According to defendant, "Dr. Shetty specifically reviewed each of the spine levels that the Plaintiff claims in this suit to have been traumatically injured in the October 30, 2016 accident and affirmatively states there are no disc herniations or disc bulges." Def.'s Mem. at 17.[10]

- The October 26, 2018 deposition testimony of Dr. Dante Leven, plaintiff's treating physician and surgeon, who concluded that the December 19, 2016 cervical MRI images did not reflect disc herniations at any level. See Def.'s Ex. C at 9; and

---

[10] Dr. Shetty did, however, identify "[a] tiny posterior endplate spur at C4-5 not compressing either C5 root," Def.'s Ex. G at 7, which is consistent with the findings of Dr. Leven, discussed *infra* at 13.

11

- The report and testimony of Dr. Steven Lastig, a radiologist retained by defendant, who has opined: (1) that the images from the December 19 MRI revealed no disc herniations or annular bulges; (2) that plaintiff's March 12, 2017 cervical MRI was "consistent with a degree of degenerative disc disease"; and (3) that the March 12, 2017 cervical MRI demonstrated "new findings" of midline disc herniations at the C3-C4 levels that were not present on the December 19 MRI and thus that the disc herniations were not causally related to the October 30, 2016 accident. See Def.'s Ex. D at 7.

In light of the foregoing, defendant maintains that plaintiff's "neck related claims must be dismissed as a matter of law," Def.'s Mem. at 19, and that once plaintiff's neck related claims are dismissed, plaintiff's remaining injuries -- namely, the injuries to his lumbar spine and right wrist -- do not rise to the level of a "serious injury" under the No-Fault Law. Thus, according to defendant, the entire action should be dismissed. Def.'s Mem. at 15.

Assuming, *arguendo*, that defendant has met his initial burden of establishing a prima facie case that the subject accident did not cause plaintiff's neck-related injuries, plaintiff has proffered sufficient contrary evidence to defeat summary judgment. Specifically, plaintiff points to the report and testimony of Dr. Leven, plaintiff's treating physician and spine surgeon, stating, *inter alia*, that:

- The December 19 MRI images were of poor quality and that it was, at least in part, because those images were "difficult to read and unreliable" that Dr. Leven recommended that plaintiff obtain a second cervical MRI. See Pl.'s Ex. B ¶ 5.

- Based on the December 19 MRI, Dr. Leven was "concerned that there was a disc herniation at [plaintiff's] C4-C5 level given what appeared to be an endplate spur on his cervical spine MRI, [plaintiff's] symptoms and complaints of pain, and the results of [a] physical examination of [plaintiff's] cervical spine." Pl.'s Ex. B ¶ 5.

- The findings in plaintiff's March 12, 2017 cervical spine MRI -- specifically, "the C4/5 disc herniation with nerve impingement that necessitated Mr. Abdulazeez to undergo an anterior cervical discectomy and fusion surgical procedure, are causally related to Mr. Abdulazeez's October 30, 2016 motor vehicle collision." Pl.'s Ex. B ¶ 16; and

- The mild signs of degeneration to the cervical spine identified by Dr. Lastig were not contributory to the C4/5 herniated disc that necessitated the July 11, 2017 surgical procedure. See Pl.'s Ex. B ¶ 17.[11]

Plaintiff has also submitted an affidavit from Dr. Zilahy, plaintiff's treating chiropractor, stating, *inter alia*, that:

> It is my opinion to a reasonable degree of medical certainty, based on my findings during the physical examinations I conducted of Mr. Abdulazeez shortly after his accident, including objective testing, Mr. Abdulazeez's complaints of pain following the subject accident, the fact that Mr. Abdulazeez was asymptomatic immediately prior to his October 30, 2016 motor vehicle accident, that Mr. Abdulazeez's injuries to his cervical spine, lumbar spine, and bilateral

---

[11] Defendant previously urged the Court to reject the opinion of Dr. Leven in light of Dr. Leven's failure to consider the January 2016 assault as a possible cause of plaintiff's neck injury. However, Dr. Leven's August 28, 2018 Declaration expressly acknowledges having reviewed plaintiff's January 2016 CT scan and x-ray, which Dr. Leven determined were "unremarkable" and non-contributory to the injuries sustained in the October 30 accident. Pl.'s Ex. B ¶ 14.

Defendant separately argues that Dr. Leven's opinion regarding plaintiff's cervical disc herniation should be disregarded because Dr. Leven has made contradictory statements regarding causality. Specifically, while Dr. Leven stated in his Declaration that he "could not definitively note any focal disc herniation or spinal stenosis in [plaintiff's] December 19, 2016 cervical spine MRI," Pl.'s Ex. B ¶ 5, he testified during his deposition "that he did not form an opinion as to the study because it was of poor quality." See Def.'s Rep. at 5-6. It is unclear to the Court that the two statements are, as defendant maintains, contradictory, much less that Dr. Leven's testimony should be disregarded in its entirety on that basis.

13

> wrists were traumatically induced and directly caused by the subject accident of October 30, 2016 in which he was a driver that was struck in the rear by another vehicle. Furthermore, Mr. Abdulazeez's cervical, lumbar, and bilateral wrist injuries are consistent with the mechanism of injury and are thus, in my opinion, directly related to the subject accident.

Pl.'s Ex. 1 ¶ 10.

Viewed in the light most favorable to plaintiff, the foregoing raises triable issues of fact that preclude summary judgment on the issue of causation. Notwithstanding the opinion of defendant's expert, Dr. Lastig, that "the images and quality of the [December 19] MRI study was technically satisfactory and that the entire MRI study was within normal limits," Def.'s Mem. at 19, there remains, at a minimum, a material issue of fact concerning the reliability of the December 19 MRI images that are at the center of this dispute. Moreover, while Dr. Leven acknowledges that plaintiff's March 2017 cervical MRI reflects mild signs of degeneration to plaintiff's cervical spine, Dr. Leven's opinion that the degeneration was non-contributory to the herniated disc that necessitated the July 2017 surgery raises a factual issue with respect to defendant's suggestion that plaintiff's spinal disc herniation could have been caused by degeneration rather than the subject accident. See Perl v. Meher, 18 N.Y.3d 208, 218–19, 936 N.Y.S.2d 655, 659–60 (2d Dep't 2011) (treating physician's opinion that plaintiff's injuries were causally related to the accident at issue was sufficient to create an issue of fact regarding whether

14

the accident or a pre-existing condition caused plaintiff's injuries); Cf. Agard v. Bryant, 24 A.D.3d 182, 182, 805 N.Y.S.2d 348, 349 (1st Dep't 2005) (granting defendant's motion for summary judgment where "[t]he sworn medical report plaintiff submitted in opposition failed to refute, or even to address, the opinion of defendant's expert that the limitations of plaintiff's knees resulted from a preexisting degenerative condition").

Because plaintiff has sufficiently rebutted defendant's assertion that the disc herniation was not caused by the subject accident, defendant's motion for summary judgment must be denied with respect to the issue of proximate cause. See Rivera, 2012 WL 3132667, at *13 (denying defendant's motion for summary judgment where plaintiff provided contrary admissible evidence that cast into question the position of defendant's expert that plaintiff's injuries were not caused by the subject accident).

### B. "Serious Injury"

Defendant argues that even assuming that plaintiff's cervical injuries were caused by the October 30 accident, plaintiff still did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of this argument, defendant relies upon case law stating that the existence of a herniated or bulging disc, in the absence of other objective medical evidence, is insufficient to prove a "serious injury." See, e.g., Catalano v. Kopmann, 73 A.D.3d 963, 964, 900 N.Y.S.2d 759, 760 (2d Dep't 2010) ("The mere

existence of a herniated or bulging disc is not evidence of a serious injury in the absence of objective evidence of the extent of the alleged physical limitations resulting from the disc injury and its duration."). According to defendant, "the Plaintiff's claim that he suffered a serious injury under Insurance Law § 5102(d) is premised primarily on a claim of a disc herniation in his cervical spine allegedly necessitating cervical spine surgery," and that since plaintiff has not shown that his physical limitations "affect[ed] his daily life to any significant degree," his neck-related "serious injury" claim must fail. See Def.'s Rep. (ECF No. 55) at 4.

Assuming, *arguendo*, that defendant has met his initial burden of demonstrating that plaintiff's cervical injuries are not "serious" within the meaning of § 5102(d), plaintiff has introduced sufficient objective evidence of a "permanent consequential limitation" and/or a "significant limitation of use" to defeat summary judgment on this issue. It is well-settled that to establish a "permanent consequential limitation" or a "significant limitation of use" under the No-Fault Law, the medical evidence submitted by plaintiff must contain either objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment evaluating plaintiff's present limitations vis-à-vis normal functioning. Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 1200 (N.Y. 2002). Here,

plaintiff has set forth, *inter alia*, the results of objective range of motion tests conducted by both Dr. Zilahy and Dr. Leven. See Zilahy Aff. (Pl.'s Ex. A) at ¶¶ 4-7 (quantifying restrictions to plaintiff's range of motion based on testing of plaintiff's cervical spine conducted in December of 2016 and February of 2017); Leven Decl. (Pl.'s Ex. B) at ¶¶ 6, 13 (noting that range of motion tests performed during plaintiff's initial appointment in February of 2017 and again in April of 2019 revealed quantified restrictions in ranges of motion).[12] Because this evidence, considered in the light most favorable to plaintiff, is sufficient to raise a triable issue of fact as to the existence of a "permanent consequential limitation" or a "significant limitation of use" within the meaning of Insurance Law § 5102(d), defendant's motion for summary judgment as to those categories of serious injury must be denied.[13]

Defendant has, however, made a prima facie showing of entitlement to judgment as a matter of law with respect to

---

[12] Dr. Zilahy notes, for example, that his December 7, 2016 physical evaluation of plaintiff revealed that "[f]lexion was restricted to 31 degrees (normal is 50 degrees, approximate 38% restriction), left lateral flexion was restricted to 26 degrees (normal is 30 degrees, approximate 13.3% restriction, right lateral flexion was restricted to 29 degrees (normal is 30 degrees, approximate 3.3% restriction)." Zilahy Aff. ¶ 4. Similarly, Dr. Leven found that "[f]lexion was restricted to 30 degrees with posterior neck pain bilaterally (normal is 50 degrees – approximate 40% restriction); extension was restricted to 30 degrees with right-sided radicular pain (normal is 60 degrees – approximate 50% restriction)." Leven Decl. ¶ 6.

[13] Having concluded that plaintiff has raised a material issue of fact concerning the existence of a "serious injury" based upon his cervical injuries, the Court need not consider defendant's argument that plaintiff's non-cervical injuries (*i.e.*, his alleged lumbar spine and wrist injuries) are not "serious injuries" within the meaning of New York's No-Fault Law.

17

plaintiff's claim that he sustained a "serious injury" under the "90/180" category of the No-Fault Law, which requires a showing that a plaintiff was "unable to perform *substantially all* of her daily activities for not less than 90 of the 180 days immediately following the accident." Rivera, 2012 WL 3132667, at *12 (emphasis added). In light of plaintiff's own testimony that, immediately following the October 30, 2016 accident, he missed only one full week of work at the mobile store and continued to work as a driver for Lyft for approximately ten to twelve hours per week, see Def.'s Ex. B at 19-22, plaintiff has failed to show, as he must, that he was unable to perform "substantially all" of his daily activities for at least three of the six months following the accident.[14]

## V. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is denied with respect to (1) proximate causation and (2) plaintiff's allegation that he sustained a "serious injury" entitling him to recovery under New York's No-Fault Insurance Law under a theory of either permanent consequential limitation or significant limitation. Defendant's motion is granted with

---

[14] As noted *supra* at 3, the parties dispute the precise amount of work that plaintiff missed during the 180 days following the accident. But even if, as plaintiff maintains, he missed work from November 11, 2016 through December 12, 2016 as a result of the subject accident, see Pl.'s Rule 56.1 ¶ 23, he still would not meet the standard for serious injury under the 90/180 category. See, e.g., Fludd v. Pena, 122 A.D.3d 436, 437, 997 N.Y.S.2d 14, 16 (1st Dep't 2014) (holding that plaintiff's claim of "serious injury" under the 90/180 category failed where "her deposition testimony indicated that she returned to work as a police officer on limited duty eight weeks after the accident").

respect to plaintiff's claim that he has suffered a serious injury under the 90/180 category.

Counsel are directed to appear for a conference with the Court on January 27, 2020 at 2:30 p.m. at the United States Court House, 500 Pearl Street, New York, New York, in Courtroom 21A. Counsel should have authority to fully discuss all aspects of the litigation, including settlement.

The Clerk of Court is respectfully directed to terminate all pending motions.

Dated:    New York, New York
            January 9, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE